IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

EVELYN PATRICK o/b/o
A.P.                                                    PLAINTIFF

    V.            Civil No. 04-5312

JO ANNE B. BARNHART, Commissioner
Social Security Administration                          DEFENDANT

## MEMORANDUM OPINION

On this 24th day of March 2006, there comes on for consideration the **Report and Recommendation (Doc. 8)** filed in this case on February 8, 2006, by the Honorable Beverly Stites Jones, United States Magistrate for the Western District of Arkansas. The Commissioner of the Social Security Administration (Commissioner) has filed written **Objections (Doc. 9)** and the Court has conducted a de novo review. The Court, being well and sufficiently advised, finds and orders as follows:

1. Plaintiff, Evelyn Patrick, brings this action on behalf of her minor son, A.P., seeking judicial review of the Commissioner's decision – issued by an Administrative Law Judge (ALJ) on October 6, 2004 – denying A.P.'s application for child's supplemental security income (SSI) benefits. On February 8, 2006, the Magistrate Judge issued a Report and Recommendation, finding that the decision was not supported by

substantial evidence and recommending that the matter be remanded for further consideration.

2.  **Standard of Review** -- The Court's review is limited to whether the Commissioner's decision to deny benefits is supported by substantial evidence on the record as a whole. See Ostronski v. Chater, 94 F.3d 413, 416.

> Substantial evidence is relevant evidence which a reasonable mind would accept as adequate to support the Commissioner's conclusion. In assessing the substantiality of the evidence, we must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it. We may not reverse the Commissioner merely because substantial evidence exists supporting a different outcome. Black v. Apfel, 143 F.3d 383, 385 (8th Cir. 1998) (internal quotations and citations omitted).

3.  **Childhood Disability Analysis** -- A three-step analysis is applied to childhood disability determinations. See Pepper ex rel. Gardner v. Barnhart, 342 F.3d 853, 854 (8th Cir. 2003); see also 416.924(a).

\*   First, the ALJ must determine whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b).

\*   Second, the ALJ must determine whether the child's impairments are "severe." 20 C.F.R. § 416.924(c).

\*   Third, the ALJ must determine whether the severe impairments meet, are medically equal, or are functionally equal in severity to the listed impairments set forth in the

disability regulations. See 20 C.F.R. § 416.924(d). Functional equivalence may be established by demonstrating marked limitations in two, or extreme limitations in one of the following areas:

- acquiring and using information;
- attending and completing tasks;
- interacting and relating with others;
- moving about and manipulating objects;
- caring for oneself; and
- health and physical well-being.

20 C.F.R. § 416.926a(a)(1).

    4.  **ALJ's Findings** -- The ALJ found that A.P.'s claim failed at step three -- as he did not have an impairment that met or medically or functionally equaled a listed impairment. The ALJ determined that A.P. had:

   *   marked limitations in his ability to acquire and use information;

   *   no limitations in his ability to attend and complete tasks, interact and relate with others, move about and manipulate objects, and care for himself; and

   *   less than marked limitations in his health and physical well-being. (Tr. 16-19.)

    (a)  **Interacting and Relating with Others** -- The Magistrate Judge's Report and Recommendation stated that it was "of particular concern" that the ALJ found no limitations in the area of interacting and relating with others.

Contrariwise, the Magistrate Judge concluded the evidence clearly demonstrated that A.P. had some limitations in this area and that these limitations were not considered by the ALJ. (Doc. 8 at pg. 4.)

The Commissioner objects to this conclusion and insists that the ALJ's finding was supported by substantial evidence.

In connection with her concern with the ALJ's finding that A.P. suffered **no** limitations in the area of interacting and relating with others, the Magistrate Judge noted:

\* that a child disability function form completed by A.P.'s mother stated that he did not have friends his own age, was unable to make new friends, and could not play team sports (Tr. 77-82);

\* that a school questionnaire completed by A.P.'s resource teacher on January 11, 2003, stated that A.P. had certain behavioral problems (Tr. 98-99);

\* that a second school questionnaire completed by A.P.'s resource teacher and his mother on January 22, 2003, portrayed A.P.'s behavioral problems as much worse than stated on the January 11th questionnaire (Tr. 94-95); and

\* that in a March 4, 2003, intellectual assessment with Dr. Mary Sonntag, A.P. and his mother both indicated that he sometimes "got into it" with his teachers; that he had been "kicked out of school" for fighting; that he withdrew into his

bedroom when visitors came to his house; and that he stayed away from his neighbors (Tr. 153-55).

(1) With regard to the school questionnaire completed on January 11, 2003, A.P.'s resource teacher indicated that A.P. had no problems with social functioning; that he might talk out of turn or interrupt others on only a weekly basis; and that he might demonstrate temper outbursts, become physically overactive and engage in aggressive behavior on only a monthly basis. Further, A.P.'s resource teacher reported that there had been a good response by A.P. to intervention consisting of verbal correction, loss of privileges, detention, referral to the principal, and suspension. (Tr. 98-99.) The Court believes this questionnaire was properly considered by the ALJ.

(2) As to the second school questionnaire dated January 22, 2003, portraying A.P.'s behavioral problems as much worse (Tr. 94-95), the ALJ observed that the information on it was provided by A.P.'s mother. The ALJ ruled that the information provided by A.P.'s mother would not be considered, as A.P.'s mother had no knowledge of how A.P. functioned in the classroom setting and there was a striking contrast between A.P.'s mother's and A.P.'s teacher's assessment of his functioning.

In light of the foregoing, The Court concludes that the ALJ was justified in not crediting the second questionnaire.

(3) The remaining evidence regarding A.P.'s limitations in the area of interacting and relating with others was based on the reports of A.P.'s mother on the disability function form and during Dr. Sonntag's intellectual assessment.

The Court believes the ALJ was justified in rejecting A.P.'s mother's reports, as they were inconsistent with the record as a whole. As observed by the ALJ, Dr. Sonntag noted no evidence of unusual passivity, dependency, aggression or impulsiveness in A.P.'s behavior. (Tr. 154) Further, on his Spring 2004 report card, A.P.'s conduct was rated as good to excellent in all classes, with the exception of one, in which his conduct was rated as satisfactory. (Tr. 145.)

(4) The above evidence does, as the Magistrate Judge concluded, demonstrate that A.P. has some limitations in the area of interacting and relating with others. However, the Court does not believe this evidence, when viewed in conjunction with the record as whole, demonstrates that A.P. has a **marked** limitation, as is required to support a finding of disability. See 20 C.F.R. 416.926a(e)(2) (a marked limitation means a limitation that is more than moderate but less than extreme; a child will be found to have a marked

limitation when the impairment interferes seriously with the child's ability to independently initiate, sustain, or complete activities). Thus, the Court cannot say that the ALJ's conclusion on that score is not supported by substantial evidence.

(b) **Mental Retardation - Adaptive Functioning** -- The Magistrate Judge also found a disability evaluation completed by Dr. Stephen Whaley to be of concern. (Tr. 156-61.) Specifically, the Magistrate Judge noted Dr. Whaley stated that A.P.'s IQ and achievement were consistent with mental retardation, but that it was not clear that his adaptive functioning was consistent with mental retardation. The Magistrate Judge thus concluded that the issue was unclear and directed the ALJ on remand to further develop the record on A.P.'s adaptive functioning.

Again, the Commissioner objects to this conclusion and the resulting direction recommended.

Section 112.05 of the childhood listing for mental retardation describes mental retardation as characterized by significantly subaverage general intellectual functioning and deficits in adaptive functioning. The ALJ found that, while A.P.'s IQ and achievement scores were compatible with a diagnosis of mild mental retardation, he did not meet the

mental retardation listing because he did not suffer from any deficits in his adaptive functioning.

Dr. Whaley completed the disability evaluation form cited to by the Magistrate Judge without examining A.P.

The ALJ relied on Dr. Sonntag's consultative evaluation of A.P. As observed by the ALJ, Dr. Sonntag was requested to specifically evaluate A.P.'s adaptive functioning. Dr. Sonntag found:

* that A.P. had no deficits in his ability to communicate effectively or in his speech or language;

* that there was no evidence of unusual passivity, dependency, aggression, or impulsiveness;

* that A.P. could dress himself, cooperate with taking his medication, and did not engage in dangerous behaviors;

* that A.P. did not appear to have any physical problems or limitations that would interfere with his adaptive functioning; and

* that A.P. had average concentration, persistence and pace. (Tr. at 154-55.)

The ALJ found that Dr. Sonntag's evaluation was corroborated throughout the record, as A.P.'s resource teacher reported no deficits in A.P.'s articulation, language, social functioning, or in his concentration, persistence, and pace.

Further, A.P.'s resource teacher reported only slight behavior difficulties and indicated that A.P. had responded well to intervention. (Tr. 94-95.) Further, school records showed that A.P. had not repeated any grade level and records from his treating pediatrician did not allude to any deficits in his adaptive functioning or any problems with his behavior.

Based on the above, the Court concludes that the ALJ's finding that A.P. suffered no deficits in adaptive functioning is supported by substantial evidence.

5. Based on the foregoing, the Court concludes that the Commissioner's objections to the Report and Recommendation should be sustained and that the recommendations of the Report and Recommendation should not be adopted. Accordingly, the Court hereby **Affirms** the ALJ's decision and plaintiff's complaint will be **DISMISSED WITH PREJUDICE.** A separate judgment will be entered accordingly.

**IT IS SO ORDERED.**

/S/JIMM LARRY HENDREN  
JIMM LARRY HENDREN  
UNITED STATES DISTRICT JUDGE